# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. SSENDIKWANAWA, | : |
| Petitioner, | : |
| v. | : 3:14-CV-01241 |
| | : (JUDGE MARIANI) |
| CRAIG LOWE, et al., | : |
| Respondents. | : |

## MEMORANDUM OPINION

## I. Introduction

This case came before the Court as a "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" filed by then-detainee Michael Ssendikwanawa. For the reasons that follow, the Court will dismiss the Petition as moot.

## II. Factual Background and Procedural History

The operative facts in this case are relatively simple and, as the parties' submissions show, undisputed. The Court recounts the undisputed facts below.

Petitioner Michael Ssendikwanawa is a native and citizen of Uganda. (*See* Petition, Doc. 1, at ¶¶ 4, 9; Response to Petition, Doc. 7, at 3.) He "was admitted to the U.S. on or about September 6, 1992 as a nonimmigrant student (F1) with authorization to remain in the United States while maintaining a full course of study." (Petition at ¶ 9; Response at 3.)

Notwithstanding the temporary nature of his student visa, Ssendikwanawa remained in the United States for approximately twenty years. In September 2012, he was arrested

and convicted here for driving under the influence. (Petition at ¶ 10; Response at 3.) Apparently upon discovering the nature of his immigration status, U.S. Immigration and Customs Enforcement (ICE) then initiated deportation proceedings against him, alleging that he had remained in the United States unlawfully after the course of study permitted by his student visa expired. (Notice to Appear at 1; Response at 3.)

While awaiting deportation, Ssendikwanawa was detained by the Philadelphia ICE in its contract detention facility at Pike County Correctional, in Lord's Valley, Pennsylvania. (See Petition at ¶¶ 10-16; Matthew Basztura Decl., Doc. 7-1, at ¶¶ 1-3.) Ssendikwanawa pursued various administrative remedies to challenge his detention, which the parties discuss in their submissions.

On June 27, 2014, Ssendikwanawa filed the instant Emergency *Habeas Corpus* Petition to this Court. (*See* Doc. 1.) ICE had been unable to secure his removal to Uganda in the intervening twenty-one months since he was put in administrative custody. (*See* Petition at ¶ 15; Response at 4-9.) The *habeas* Petition and the Government's Response address at great length whether his resulting prolonged detention was justifiable.

Finally, on July 7, 2014, the Government represented that Ssendikwanawa had been released from detention pending his removal from the United States. (Response at 10; Release Notification, Doc. 7-1, Ex. 2.) This release was subject to certain conditions and to ICE supervision. (Order of Supervision, Doc. 7-1, Ex. 3.) The truth of these representations was established during a status conference between the Court and counsel on July 11,

2

2014. During that conference, counsel for the Petitioner argued that, notwithstanding Petitioner's release from custody, his *habeas* Petition should not be dismissed as moot, for reasons that could be stated more fully in briefs. The Court therefore ordered the parties to file supplemental briefs on the issue, (*see* Order, July 11, 2014, Doc. 10), which they did, (*see* Pet.'s Mem. in Supp. of *Habeas* Petition, Doc. 14; Resps.' Supp. Response to *Habeas* Petition, Doc. 15).

It is to this narrow issue—whether Petitioner's release from custody renders his *habeas* Petition moot—that the Court now turns.

## III. Analysis

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400 (1990).

> Early in its history, [the Supreme] Court held that it had no power to issue advisory opinions, *Hayburn's Case*, 2 Dall. 409, 1 L. Ed. 436 (1792), as interpreted in *Muskrat v. United States*, 219 U.S. 346, 351-353, 31 S. Ct. 250, 251-252, 55 L. Ed. 246 (1911), and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. *Local No. 8-6, Oil Chemical and Atomic Workers Intern. Union v. Missouri*, 361 U.S. 363, 367, 80 S. Ct. 391, 394, 4 L.Ed.2d 373 (1960). To be cognizable in a federal court, a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937). However, "[m]oot questions require no answer." *Missouri, Kansas & Texas R. Co. v. Ferris*, 179 U.S. 602, 606, 21 S. Ct. 231, 233, 45 L. Ed. 337 (1900). Mootness is a jurisdictional question because the

> Court "is not empowered to decide moot questions or abstract propositions," *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S. Ct. 448, 449, 64 L. Ed. 808 (1920), quoting *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314, 13 S. Ct. 876, 878, 37 L. Ed. 747 (1893); our impotence "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S. Ct. 391, 394, 11 L. Ed. 2d 347 (1964).

*North Carolina v. Rice*, 404 U.S. 244, 246, 92 S. Ct. 402, 404, 30 L.Ed.2d 413 (1971). Thus, if "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996).

The Government bears the burden of proving that the instant action is moot. *See Diop v. ICE*, 656 F.3d 221, 227 (3d Cir. 2011). But generally, a *habeas* petition "becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition." *DeFoy v. McCullough*, 393 F.3d 439, 441 (3d Cir. 2005) (citing *Lane v. Williams*, 455 U.S. 624, 631, 102 S. Ct. 1322, 1327, 71 L. Ed. 2d 508 (1982)). Given that release from custody is precisely the relief sought in a typical *habeas* petition, this is a clear application of the case or controversy requirement. *See id.* at 441-42 (stating this principle and collecting cases on *habeas* mootness).

Here, the parties agree that Ssendikwanawa was released from custody on July 7, 2014. Indeed, Petitioner admits that "ICE is no longer holding Petitioner in custody." (Doc. 14 at 4.) Thus, because his Petition originally sought "a writ of *habeas corpus* to remedy his

4

unlawful detention, and to enjoin Defendants from continuing to hold him and release him from custody," (Petition at 1), it would appear that the requested relief has already been granted.

In the criminal context, a prisoner released on conditions of parole may still assert a *habeas* petition because the significant deprivations of liberty that parole entails mean that the parolee remains "in custody." *See generally Jones v. Cunningham*, 371 U.S. 236, 241-44, 83 S. Ct. 373, 376-78, 9 L. Ed. 2d 285 (1963). However, the Third Circuit has held that conditions of release imposed on an illegal alien awaiting deportation do not likewise qualify as "custody." It has addressed nearly identical cases to Ssendikwanawa's in recent years, where an alien was present in the United States illegally, was subsequently detained in ICE custody, filed a *habeas* petition, and was then conditionally released pending removal from the United States before the Court addressed the merits of the petition. *See Nunes v. Decker*, 480 Fed. App'x 173, 175 (3d Cir. 2012); *Sanchez v. Attorney General*, 146 Fed. App'x 547, 548-49 (3d Cir. 2005). In such cases, the Circuit ruled that conditional release pending removal rendered the *habeas* petition moot. *See Nunes*, 480 Fed. App'x at 175; *Sanchez*, 146 Fed. App'x at 549. This is true even though it is possible that the alien could be redetained before deportation. As the *Nunes* court explained, the petitioner "was released on an order of supervision, which does not provide for future detention absent [his] violation of a condition of his release. We cannot assume that [petitioner], who acknowledged the conditions of his release in writing, will violate these conditions and place

5

himself at risk of detention." *Nunes*, 480 Fed. App'x at 175 (citing *Honig v. Doe*, 484 U.S. 305, 320, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) (recognizing unwillingness to assume that a party seeking relief from injury inflicted by authorities will engage in conduct that will place him at risk of that injury).

The same principles apply here. Because Ssendikwanawa was released during the pendency of his *habeas* Petition, subject to these same types of conditions, the Court finds *Nunes* and *Sanchez* highly persuasive and concludes that Ssendikwanawa's *habeas* Petition should be dismissed as moot.[1]

Moreover, all of the Petitioner's arguments to show either that the Petition is not moot or that a mootness exception applies are unavailing.[2]

Petitioner's first argument arises in reaction to the Government's assertions in its Response to the original Petition that Ssendikwanawa's detention was constitutionally justified. Petitioner takes exception to such arguments and states that "[b]ased on this logic,

---

[1] The Court notes that Ssendikwanawa's petition raises issues beyond a demand for release: namely, violations of his due process rights, (*see* Petition at 9), and a prayer for an order "enjoining Respondents from removing Petitioner from the United States," (*id.* at 10). The existence of these other issues does not affect the Court's mootness decision because they are not properly raised in a *habeas* petition before a district court. The alleged due process violations are properly raised in a civil action, which, the Court notices, has already been filed. *See Ssendikwanawa v. Pike County*, 3:15-CV-545-ARC. Nor is this Court entitled to enjoin Respondents from deporting the Petitioner. The REAL ID Act of 2005
 eliminated the availability of *habeas corpus* relief in the district courts for aliens seeking to
 challenge orders of removal. Instead, Congress substituted petitions for review, filed with
 the courts of appeals within the first 30 days after issuance of an order of removal, as the
 sole vehicle whereby aliens would challenge their removal.
*Kolkevich v. Attorney General*, 501 F.3d 323, 326 (3d Cir. 2007); *see also* 8 U.S.C. § 1252(g).

[2] The Government's response to Plaintiff's mootness arguments spends a significant amount of space discussing the "capable of repetition, yet evading review" exception to mootness. (*See* Doc. 15 at 6-9.) However, the Court does not read Petitioner's brief to rely on this particular exception. In the pages that follow, the Court addresses only the arguments that Petitioner explicitly raises.

there is nothing which would prohibit the government from again detaining Petitioner." (Doc. 14 at 5.) That is because "[i]nsofar as the government has made it clear that it is its position that Petitioner's detention, and in fact his continued detention, was entirely constitutional, there is every reason to believe Petitioner remains subject to an unlawful detention" in the future. (*Id.* at 7.) Therefore, "[t]o the extent that Petitioner remains subject to detention while awaiting deportation or immigration relief and the government concludes that such detention is constitutional and relief from subsequent detention is sought, the case in controversy is intact and justiciable." (*Id.* at 5.)

The Court cannot agree with this reasoning. The Government only argued that it acted constitutionally during Ssendikwanawa's actual custody, when a live case or controversy still existed. But the fact that the Government chose to defend its conduct in court, and not simply concede immediate defeat, does not affect the Court's analysis of whether a case or controversy still exists after Petitioner's release. The simple fact is that release gave Petitioner the relief he sought, regardless of the positions that the Government took before it released him.

Nor can the Court agree with the inference that, because the Government once argued that its past conduct was constitutional, Petitioner is at risk of redetention in the future. There is no contradiction between a belief that the Government acted constitutionally given the conditions existing in the past and a belief that to subsequently detain Petitioner in

7

the future, under different conditions, would be illegal.[3] Now that Ssendikwanawa is released on an order of supervision, which only allows for redetention under certain conditions, there is no reason to believe that the Government plans to redetain him absent a violation of those conditions. *Cf. Nunes*, 480 Fed. App'x at 175. Therefore, the argument that Ssendikwanawa risks another detention is "wholly speculative" and cannot overcome the conclusion that the relief sought by the *habeas* petition has already been granted. *Cf. Aziz v. Attorney General*, 537 Fed. App'x 56, 57 (3d Cir. 2013).

But even if the Government does place Ssendikwanawa back in detention, that does not affect the mootness of the present Petition. Rather, it would merely give rise to a new case or controversy necessitating a new *habeas* petition. Regardless of what happens in the future, the case or controversy giving rise to the Petition actually before the Court is over.

Second, Petitioner argues that he has been harmed by "his two-year illegal detention and the injurious impact to his life and livelihood that detention has manifest[ed]." (Doc. 14 at 5.) He therefore argues that "Petitioner is entitled to a minimum of a finding that his rights had been violated . . . ." (*Id.*)

The Court does not wish to downplay any harm that Ssendikwanawa may have experienced. However, his second argument conflates the distinction between a *habeas* petition and a civil complaint alleging violations of civil rights. If Ssendikwanawa believes

---

[3] The Court does not hold that either of these positions is necessarily correct. It merely holds that there is no contradiction between the two, so that the Government's past positions are irrelevant for mootness purposes.

8

that his civil rights were violated by detention, then he should file a civil complaint alleging those violations. Indeed, a review of the public record indicates that he has in fact filed such a complaint. (See note 1, supra.) He cannot litigate past civil rights violations by means of a habeas petition, the only purpose of which is to free him from confinement.

Finally, Petitioner argues that, "[e]ven if this Court were to determine that Petitioner's issues are now moot, such status was caused by the government's determination to deprive this Court of its jurisdiction and thereby avoid this Court [sic] review of Petitioner's claim on the merits." (Doc. 14 at 5.) He argues that, by releasing the Petitioner from detention, the Government attempts to avoid the consequences of years of misconduct, which it is then permitted to characterize in its briefs as constitutional, while insulating itself from a judicial decision potentially holding it wrong. (See id. at 5-7.) Petitioner relies on the case *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000) for the proposition that courts may decline to dismiss a case for mootness when a party attempts to make its own case moot in order to manipulate jurisdiction and insulate a favorable decision from review. (See id. at 6.)

The Court, however, concludes that *Pap's A.M.* and the mootness exception contained therein are plainly inapplicable to the case at hand. *Pap's* involved a First Amendment challenge by a nude dancing establishment to the City of Erie's local ordinance banning public nudity. See *Pap's A.M.*, 529 U.S. at 282. The issue was litigated to the Pennsylvania Supreme Court, which held in favor of Plaintiff Pap's that the relevant portions

9

of the ordinance burdened constitutionally protected conduct. *Id.* at 285-86. The Supreme Court granted certiorari on the constitutional issue, but Pap's thereafter filed an affidavit stating that it had "ceased to operate a nude dancing establishment in Erie" and that the case is therefore moot, as it will "have no effect upon Respondent." *Id.* at 287. Nonetheless, the Supreme Court declined to dismiss the case as moot, for several reasons. For one, it noted that "Pap's is still incorporated under Pennsylvania law, and it could again decide to operate a nude dancing establishment in Erie." *Id.* The Court was further "influenced by Pap's failure, despite its obligation to the Court, to mention a word about the potential mootness issue in its brief in opposition to the petition for writ of certiorari, which was filed in April 1999, even though . . . [the business] was closed and that property sold in 1998." *Id.* at 288. Finally, it stated:

> In any event, this is not a run of the mill voluntary cessation case. Here it is the plaintiff who, having prevailed below, now seeks to have the case declared moot. And it is the city of Erie that seeks to invoke the federal judicial power to obtain this Court's review of the Pennsylvania Supreme Court decision. *Cf. ASARCO Inc. v. Kadish*, 490 U.S. 605, 617-618, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989). The city has an ongoing injury because it is barred from enforcing the public nudity provisions of its ordinance. If the challenged ordinance is found constitutional, then Erie can enforce it, and the availability of such relief is sufficient to prevent the case from being moot. *See Church of Scientology of Cal. v. United States, supra*, at 13, 113 S. Ct. 447. And Pap's still has a concrete stake in the outcome of this case because, to the extent Pap's has an interest in resuming operations, it has an interest in preserving the judgment of the Pennsylvania Supreme Court. Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness here. *See United States v. W.T. Grant Co., supra*, at 632, 73 S. Ct. 894; *cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 74, 117 S. Ct.

1055, 137 L. Ed. 2d 170 (1997). Although the issue is close, we conclude that the case is not moot, and we turn to the merits.

*Id.* at 288-89.

None of these considerations apply here. There is no reason to believe that the Government acted improperly by according Petitioner the relief he sought at the outset of litigation instead of waiting for a Court order to do so, and the procedural history of this case reflects no other effort by the Government to unfairly manipulate the record to its favor. Nor, as discussed above, is there any reason to believe that the Government will resume the conduct giving rise to Ssendikwanawa's petition, making it unlike Pap's, a private corporation that could resume business at any time. Finally, in the instant case, unlike in *Pap's A.M.*, the party arguing for mootness is the party against whom the action was filed. This makes our case much more analogous to a civil case that settles shortly after filing. Though early settlement does not give the plaintiff a judicial pronouncement admonishing the adverse party, it does give it the relief that it originally sought, and thereby ends the controversy. For mootness purposes, this is all that matters.

## IV. Conclusion

For the foregoing reasons, Petitioner's Petition for *Habeas Corpus* (Doc. 1) is **DENIED AS MOOT**. A separate Order follows.

Robert D. Mariani
United States District Judge